## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JA'LEE FOREMAN, JR., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-1062-F |
| | ) | |
| OKLAHOMA COUNTY SHERIFF, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANTS BOARD OF COUNTY COMMISSIONERS AND OKLAHOMA COUNTY SHERIFF TOMMY JOHNSON, III

Randall J. Wood, OBA #10531
Robert S. Lafferrandre, OBA #11897
Jeffrey C. Hendrickson, OBA #32798
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Avenue
Oklahoma City, OK 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rwood@piercecouch.com
rlafferrandre@piercecouch.com
jhendrickson@piercecouch.com
*Attorneys for Defendants Oklahoma*
*County Sheriff, Board of County*
*Commissioners for Oklahoma County*

March 7, 2022

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION .............................................................................................................. 1

ARGUMENTS AND AUTHORITIES ............................................................................... 3

    I. THE COURT SHOULD DISMISS DEFENDANT BOARD AS A
    MATTER OF LAW ................................................................................................. 3

    II. THE COURT SHOULD DISMISS THE SHERIFF'S OFFICE BECAUSE
    PLAINTIFF'S FAILED TO PLEAD SUFFICIENT FACTS AGAINST IT ...... 4

        A. PLAINTIFFS HAVE FAILED TO ALLEGE WIDESPREAD,
        PERMANENT, AND/OR A WELL-SETTLED CUSTOM.................... 6

        B. PLAINTIFFS FAILED TO PLEAD FACTS SHOWING ANY
        ALLEGED FAILURE OF THE SHERIFF'S OFFICE TO
        TRAIN OR SUPERVISE DETENTION OFFICERS ............................. 9

    III. THE COURT SHOULD REJECT RELIANCE ON THE 2008
    DEPARTMENT OF JUSTICE REPORT ......................................................... 14

CONCLUSION ............................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

Cases

August 2017. *Willis v. Okla. Cty. Det. Ctr.*, No. 18-CV-323-D,
  2019 WL 4409219 (W.D. Okla. Sept. 13, 2019) ........................................................... 15

*Bell Atlantic Corp*. *v*. *Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 4

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) .......................................................................................... 10

*Bryson,*
  627 F.3d ............................................................................................................................ 6

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ............................................................................................... 9, 11, 12

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808, 105 S. Ct. 2427 (1985) ............................................................................ 12

*Connick v. Thompson*,
  563 U.S. 51 (2011) ...................................................................................................... 9, 10

*Cory v. Allstate Ins.*,
  583 F.3d 1240 (10th Cir. 2009) ........................................................................................ 5

*Escobar v. Mora*,
  496 F. App'x. 806 (10th Cir. 2012) .................................................................................. 5

*Fisher v. Harden*,
  398 F.3d 837 (6th Cir. 2005) .......................................................................................... 12

*Fraire v. City of Arlington*,
  957 F.2d 1268 (5th Cir. 1992) ........................................................................................ 10

*Goss v. Bd. of Cnty. Comm'rs of Creek Cnty*.,
  No. 13-CV-0374-CVE-TLW, 2014 WL 4983856 (N.D. Okla. Oct. 6, 2014) .............. 11

*Griego v. City of Albuquerque*,
  100 F.Supp. 3d 1192 (D.N.M. 2015) ................................................................................ 8

*Hinton v. City of Elwood, Kan.*,
  997 F.2d 774 (10th Cir. 1993) .......................................................................................... 5

*Jett v. Dallas Indep. Sch. Dist.*,
  491 U.S. 701 (1989) .......................................................................................................... 6

*Keating v. Pittston City,*
  446 Fed. Appx. 492 (3d Cir. 2011) ................................................................................... 8

*Mann v. Yarnell*,
  497 F.3d 822 (8th Cir. 2007) .......................................................................................... 12

*Martinez v. Beggs*,
   563 F.3d 1082 (10th Cir. 2009)..................................................................................... 3, 4
*McLain v. Sheriff of Mayes Cty.*,
   595 F. App'x. 748 (10th Cir. 2014) ................................................................................ 12
*Meadows v. Whetsel*,
   2015 WL 7016496.................................................................................................... 12, 15
*Meas v. City and County of San Francisco*,
   681 F.Supp.2d 1128 (N.D. Cal. 2010) ........................................................................... 11
*Monell*,
   436 U.S....................................................................................................................... 5
*Moore v. Town of Erie*,
   2013 WL 3786646 (D. Colo. July 19, 2013) ................................................................. 10
*Murphy v. City of Tulsa*,
   950 F.3d 641 (10th Cir. 2019).................................................................................... 5, 6
*Okolo v. Metropolitan Government of Nashville*,
   892 F.Supp.2d 931 (M.D. Tenn. 2012).......................................................................... 10
*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)............................................................................................... 5, 6, 7
*Perry v. Durborow*,
   892 F.3d 1116 (10th Cir. 2018)..................................................................................... 13
*Peterson v. City of Fort Worth, Tex.*,
   588 F.3d 838 (5th Cir. 2009)......................................................................................... 12
*Plinton v. County of Summit*,
   540 P.3d 459 (6th Cir. 2008)......................................................................................... 12
*Pyle v. Woods*,
   874 F.3d 1257 (10th Cir. 2017)....................................................................................... 8
*Ristow v. Hansen*,
   719 Fed. Appx. 359 (5th Cir. 2018)................................................................................ 8
*Sexton v. Kenton County Detention Center*,
   702 F.Supp.2d 784 (E.D. Ky. 2010) .............................................................................. 10
*Strauss v. City of Chicago,*
   760 F.2d 765 (7th Cir.1985).......................................................................................... 8
*Tafoya v. Salazar*,
   516 F.3d 912 (10th Cir. 2008)....................................................................................... 13
*Waller v. City & Cty. of Denver*,
   932 F.3d 1277 (10th Cir. 2019)....................................................................................... 9
*White v. City of Albuquerque*,
   No. CV 12-0988 MV/KBM, 2014 WL 12639935 (D.N.M. Sept. 29, 2014)................. 13

Statutes

Okla. Stat. tit. 19, §§ 513, 513.1 .......................................................................................... 4

Rules

FED. R. CIV. P. 12(b)(6) ........................................................................................................ 1

**JOINT MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANTS
BOARD OF COUNTY COMMISSIONERS AND OKLAHOMA COUNTY
<u>SHERIFF TOMMY JOHNSON, III</u>**

Defendants Board of County Commissioners for Oklahoma County ("Board") and

Oklahoma County Sheriff Tommie Johnson, III in his official capacity, ("Sheriff's Office")

move jointly for an Order from this Court dismissing Plaintiffs' claims against them under

FED. R. CIV. P. 12(b)(6). Defendants Board and the Sheriff's Office offer the following

brief in support.

<u>INTRODUCTION</u>

In this § 1983 lawsuit, Plaintiffs seek to impose municipal liability on the Board and

Sheriff's Office, yet wholly fail to offer any facts to support such a claim. Indeed, Plaintiffs'

Complaint does not identify a specific, long-standing municipal policy that could have

caused the alleged harm. Instead, Plaintiffs only offer allegations regarding the isolated

actions of a two detention officers. Plaintiffs then attempt to stretch these isolated incidents

into a claim of municipal liability.

To the point: Plaintiffs allege that in November and December 2019, Defendants

Butler and Miles inappropriately restrained Plaintiffs and forced three of them to listen to

a children's song called "Baby Shark" for an extended period of time. [1] Plaintiffs further

allege non-party Lieutenant Hendershott failed to intervene. Doc. 1, pp. 4-9. Plaintiffs do

not provide any further facts that would link these incidents to a municipal custom or

---

[1] Plaintiff Foreman does not allege he was forced to listen to "Baby Shark." See Doc. 1, pp. 4-5.

policy. Moreover, according to the news articles cited in the Complaint[2], the officers were immediately fired by the Sheriff's Office and face pending criminal charges. Plaintiffs do not identify any other incidents that would have put the Board or Sheriff's Office on notice of any deficiencies at the Oklahoma County jail.

Instead, the Complaint resorts to buzzwords and threadbare allegations, statements which fail to establish a plausible municipal liability claim. To wit:

- "There is an affirmative link between the aforementioned constitutional acts…and policies, practices and/or customs…." [Doc. 1, p. 12, ¶ 66]

- "Oklahoma County/OCSO/OCCJA failed to adequately train and supervise its officers...with respect to, *inter alia*: use of force, de-escalation, the use of force continuum, appropriate use of force in a correctional setting, use of force on a detainee in handcuffs, cruel or inhuman corrections practices, and constitutional requirements for the conditions of confinement." [*Id*., p. 12, ¶ 67]

- "Oklahoma County/OCSO/OCCJA knew, must have known or should have known, due to the obviously inadequate training and supervision, violations of detainees' constitutional rights were probable, but failed to take reasonable measure to alleviate the risk of harm." [*Id*., at p. 14, ¶ 70]

- "Indeed, unabated unconstitutional conditions at the Jail long pre-date the misconduct of Miles, Butler, and Hendershott." [*Id*., at p. 14, ¶ 71]

- Plaintiffs make a vague reference to a United States Department of Justice report from 2008, failing to connect how a report from 2008 is relevant to Plaintiffs' allegations. [*Id*., at p. 14, ¶ 72]

---

[2] Bryan Pietsch, *Jail Employees Face Charges After Using 'Baby Shark' Song to Punish* Inmates, The New York Times, (October 6, 2020); Tan Mei Zi, *US prison guards in hot water after forcing inmates to listen to "Baby Shark" on loop while handcuffed*, Malay Mail, (October 7, 2020); See Doc. 1, pp. 10-11, fn. 1, 5.

Plaintiffs' Complaint falls far short of meeting the standards for stating a claim for municipal liability.

## ARGUMENTS AND AUTHORITIES

Defendants must address an initial problem with the Complaint: Plaintiffs include both the Board and the Sheriff's Office as defendants. Plaintiffs' claims arise from events occurring at the county jail, and are further based on allegations of shortcomings related to training and supervising detention officers. Only the Sheriff's Office is the proper defendant to name with respect to these claims. The Board should be dismissed with prejudice. Then, the principal problem: Plaintiffs fail to allege facts sufficient to support a plausible municipal liability claim against the Sheriff's Office. Thus, the Court should dismiss that claim as well.

## I.   THE COURT SHOULD DISMISS DEFENDANT BOARD AS A MATTER OF LAW.

Plaintiffs' claims are based on alleged failures to adequately train and supervise detention officers at the Oklahoma County jail, a facility that is under the policy-making authority of the Sheriff's Office. See Doc. 1, pp. 12-14. While the Board is a named defendant, there are no allegations that would support a claim against the Board in its capacity as the Board of County Commissioners. Moreover, as Plaintiffs have named the Sheriff's Office in its official capacity, any claim against the Board as the named representative of Oklahoma County is duplicative. *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity ... is the same as bringing a suit against the county.").

*As a matter of law*, sheriffs have the charge and custody of the jail of their county. Okla. Stat. tit. 19, §§ 513, 513.1. As such, sheriffs are responsible for training and supervising jail personnel. *Id.* Considering the foregoing, the Board is not a proper party because (1) Plaintiffs' claims arise from occurrences in a county jail, (2) Oklahoma sheriffs (not the Board of County Commissioners), maintain final policymaking authority over the county jail, and (3) the Sheriff's Office has already been included as a defendant. Since Plaintiffs have said they are asserting municipal liability claims against the Sheriff's Office, the Board should be dismissed as a duplicative defendant.

## II.  THE COURT SHOULD DISMISS THE SHERIFF'S OFFICE BECAUSE PLAINTIFFS FAILED TO PLEAD SUFFICIENT FACTS AGAINST IT.

Plaintiffs' remaining claims should be dismissed for failure to plead sufficient facts. The allegations in Plaintiffs' Complaint are based on isolated incidents involving two jailers. On the basis of these isolated incidents, Plaintiffs seek to hold the Sheriff's Office municipally liable.[3] However, Plaintiffs' allegations fail to sufficiently identify any custom, policy, or shortcoming to support a plausible argument that Sheriff's Office is responsible for what happened.

As the Court is well aware, the Complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id*. If the Complaint contains only boilerplate labels and conclusory allegations,

---

[3] If the Court disagrees with the Defendants' arguments in Section II, this same point applies to the Board as well.

4

dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 F. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)).

To establish liability against a local government entity under §1983, plaintiffs must show: (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993); *Murphy v. City of Tulsa*, 950 F.3d 641 (10th Cir. 2019).

The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). It is well established that a government body is not liable under §1983 for the acts of an employee on a *respondeat superior* theory. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691 (1978). It is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort. *Pembaur*, 475 U.S. at 479-80.

A municipal policy or custom may manifest itself in several forms: (1) a formal regulation or policy; (2) a widespread, permanent, and well-settled custom; (3) a decision by an employee with final policymaking authority; (4) a final policymaker's ratification of both an employee's unconstitutional actions and the basis for them; or (5) the deliberately indifferent failure to appropriately hire, train, supervise, or discipline employees. *Murphy*,

950 F.3d at 644; Here, Plaintiffs rely upon the second and fifth sources as evidence of a policy or custom.

### A.   PLAINTIFFS HAVE FAILED TO ALLEGE WIDESPREAD, PERMANENT, AND/OR A WELL-SETTLED CUSTOM.

Municipal liability may be imposed through identification of a "widespread practice that, although not authorized by a written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). In order to do so, a plaintiff must demonstrate there exists a longstanding practice or custom that has essentially become a standard operating procedure. *Murphy*, 950 F.3d at 649, (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (quoting *Pembaur*, 475 U.S. at 485–87).

Here, Plaintiffs allege they were each subjected to excessive force by being restrained for a prolonged period, with some placed in a "standing stress position," and/or forced to listen to the well-known children's song called "Baby Shark" on a loop. Plaintiffs wail at length that their treatment was tantamount to "torture" and offer comparisons to Abu Ghraib and Guantanamo Bay.  But when it comes to laying out a factual basis for their municipal liability claims, Plaintiffs offer only fact-free boilerplate:

- "The history of mistreatment was well known to supervisors at the Jail, but no action was taken to stop the conduct and no reasonable measures were taken to alleviate the risk of harm to detainees like Plaintiffs." *Id*., ¶ 64.

- "There is an affirmative link between the…unconstitutional acts…and policies, practices, and/or customs which Oklahoma County/OCSO/OCCJA…possessed responsibility for." *Id*. ¶ 66

6

- "Oklahoma County/OCSO/OCCJA failed to adequately train and supervise…." *Id*., ¶67.

- "Indeed, unabated unconstitutional conditions at the Jail long pre-date the misconduct of Miles, Butler, and Hendershott." *Id*., ¶ 71.

See Doc. 1, ¶¶ 82-83, 92-93 ("The…customs, practices, and policies…are outlined in Paragraphs 56-74, *supra*.").

    With no supporting facts, Plaintiffs also claim there is a long history of mistreatment by Defendants Miles and Butler (and non-party Lieutenant Hendershott). Yet, there are no further factual details provided to support this accusation. See Doc. 1, pp. 13-14 ¶¶ 69-70. The allegation of a "long history of mistreatment" without any facts is merely a threadbare, formulaic accusation not entitled to the presumption of truth.

    What is patently missing from the "policies and customs" outlined in Paragraphs 56-74 of the Complaint are any facts showing similar widespread misconduct at the Oklahoma County jail. Other than Plaintiffs' own experiences, Plaintiffs fail to identify any prior instances of wrongful prolonged restraint or the use of children's music for inmate discipline. At its heart, Plaintiffs' Complaint fails to present claims with any degree of specificity to describe how the Sheriff's Office could be liable for the alleged misconduct of two detention officers that it promptly fired.

    Courts have emphasized that in pleading a basis for municipal liability, conclusory allegations of "policy or custom" will be rejected as insufficient:

7

- *Keating v. Pittston City,* 446 Fed. Appx. 492, 495 (3d Cir. 2011) ("[K]eating has alleged that Pittston City provided inadequate training to its police officers in only the most general, conclusory terms; these allegations are insufficient to make out a meritorious *Monell* claim.");

- *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) ("Jones argues his complaint is sufficient because it contains an allegation it was the policy of Cottonwood Heights to query employees' prescription drug records without a warrant. It is true Jones's complaint does so allege, but this allegation is the type of 'formulaic recitation of the elements of a cause of action' that is insufficient to meet the Twombly pleading standard.");

- *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985) ("A complaint that tracks *Monell's* requirement of official policy with bare allegations cannot stand.... The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of Section 1983 liability devoid of any well-pleaded facts ...." (footnote omitted)); and

- *Ristow v. Hansen*, 719 Fed. Appx. 359, 366-67 (5th Cir. 2018) (unpublished) ("As Ristow has not pleaded facts beyond conclusional allegations which demonstrate that his constitutional rights were violated or that any such violations were the result of an official policy promulgated by the municipal policymaker, he has failed to state a valid *Monell* claim against the City.").

"[T]hese cases all stand for the same thing: at the pleading stage, the existence of a *Monell* policy is a 'conclusion to be built up to, rather than a 'fact' to be baldly asserted." *Griego v. City of Albuquerque*, 100 F.Supp. 3d 1192, 1214-15 (D.N.M. 2015). Yet Plaintiffs ignore all of this. Their municipal liability allegations are nothing but municipal liability buzzwords.

8

Plaintiffs attempt to transform the limited alleged misconduct of these two detention officers into the equivalent of a longstanding policy or custom of the Sheriff's Office. Courts have rejected this tactic many times, as discussed above.

**B.   PLAINTIFFS FAILED TO PLEAD FACTS SHOWING ANY ALLEGED FAILURE OF THE SHERIFF'S OFFICE TO TRAIN OR SUPERVISE THE DETENTION OFFICERS.**

Plaintiffs also claim that there was a failure to adequately train and supervise jailers, but do not sufficiently explain the purported failures. Was there a sufficiently similar incident that would have put a policymaker on notice? What training/supervision was inadequate? How was the training or supervision causally related to the actions of the Detention Officers? As the Supreme Court has warned, "**[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train**." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added). A claim based on a failure to train or supervise can only exist "only where the failure to train **amounts to deliberate indifference** to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (emphasis added). The same standard applies whether assessing municipal liability for claims of failure to train or supervise. *See e.g. Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).

Plaintiffs must establish that the Sheriff's Office was deliberately indifferent to a *known* deficiency in the training or supervision of the jailers. Specifically, Plaintiffs must show that the Sheriff's Office disregarded a known or obvious consequence of a failure to train or supervise in the relevant respects. To do so, a plaintiff must identify "[a] pattern of similar constitutional violations by untrained employees…'Without notice that a course of

9

training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Connick*, 563 U.S. at 62. It is only in those situations where the consequences are "highly predictable" and "patently obvious," may a plaintiff succeed without identifying a pre-existing pattern of violations. *Id.*, at 63-64.

Many other courts have affirmed that alleged shortfalls in a single officer's training falls far short of establishing municipal liability. "[A]bsent evidence of a program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant[.]" *Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) (citation and internal quotation marks omitted); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (unconstitutional custom or policy could not be inferred from city's "isolated decision not to discipline a single officer for a single incident of illegality") (internal citations omitted); *Moore v. Town of Erie*, 2013 WL 3786646 at *4 (D. Colo. July 19, 2013) (finding that "one prior incident is insufficient to provide the Town of Erie with the actual or constructive notice that it needed to implement a policy or training program"); *Okolo v. Metropolitan Government of Nashville*, 892 F.Supp.2d 931, 943 (M.D. Tenn. 2012) (no municipal liability claim where plaintiff alleged no "department-wide failure to train"); *Sexton v. Kenton County Detention Center*, 702 F.Supp.2d 784, 791 (E.D. Ky. 2010) (county's "purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability. A *Monell* claim will fail where the plaintiff provides evidence as to only a single officer (or three), rather than evidence regarding department-wide inadequacy in training.") (quoting

*Meas v. City and County of San Francisco*, 681 F.Supp.2d 1128, 1142 (N.D. Cal. 2010) (internal quotation marks omitted).

Moreover, Plaintiffs must establish causation by identifying a deficiency in the training program that is "closely related to the ultimate injury" and then demonstrate that the deficiency in training caused the injury. *City of Canton*, 489 U.S. 378, 391; *Goss v. Bd. of Cnty. Comm'rs of Creek Cnty*., No. 13-CV-0374-CVE-TLW, 2014 WL 4983856, at *20 (N.D. Okla. Oct. 6, 2014) ("The Supreme Court and the Tenth Circuit require more than a simple statement of fault to prove causation.") (citing *City of Canton*, 489 U.S. at 391–92 ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.")).

The Complaint fails to meet the requirements of *City of Canton* and the other cases cited above. Plaintiffs broadly conclude the alleged unconstitutional conduct is the result of some deficiency in the Sheriff's Office's training and supervision. *See* Doc. 1, ¶¶ 69-70 ("This exemplifies a systemic and deep-seated failure to train and supervise…."; "Oklahoma County/OCSO/OCCJA knew, must have known or should have known that, due to the obviously inadequate training and supervision…."). But the allegations presented by Plaintiffs only evidence isolated incidents of misconduct by individual officers. As stated above, isolated instances of misconduct do not evidence a failure to train or supervise, especially when pled in such a general, conclusory manner. There are simply no facts suggesting that what happened was a product of a failure to train/supervise. Most

11

importantly, Plaintiffs failed to allege a pattern of similar constitutional violations by detention officers at Oklahoma County jail; in fact, Plaintiffs failed to identify *any other* instance, other than their own, in which a detainee was mistreated in the same or similar manner as Plaintiffs.

"[P]laintiff must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. County of Summit*, 540 P.3d 459, 464 (6th Cir. 2008) *quoting Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Mann v. Yarnell*, 497 F.3d 822, 827-28 (8th Cir. 2007); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985). "To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*." *City of Canton*, 489 U.S. at 399-400. Indeed, courts have frequently rejected efforts to impose municipal liability based only on allegations of single or infrequent prior incidents. "A 'single isolated incident' does not prove the existence of an unconstitutional policy or custom." *McLain v. Sheriff of Mayes Cty.*, 595 F. App'x. 748, 753–754 (10th Cir. 2014) (citing *Tuttle*, 471 U.S. at 821). "Where prior incidents are used to prove a pattern, they **must have occurred for so long or so frequently** that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (cited favorably in *Meadows v. Whetsel*, 2015 WL 7016496, at *6) (emphasis added). Said

12

another way, "[t]o establish notice, Plaintiff was required to prove the existence of a pattern of tortious conduct and not simply an isolated instance." *White v. City of Albuquerque*, No. CV 12-0988 MV/KBM, 2014 WL 12639935, at \*33 (D.N.M. Sept. 29, 2014).

Plaintiffs claim that the Sheriff's Office was somehow deliberately indifferent to inmate safety because it had a management style that was "hands-off," "undisciplined," or "anything goes." Doc. 1, ¶ 68. But, how was the Sheriffs Office "hands-off?" How was it "undisciplined?" Who knew this might happen? Plaintiffs do not say. All Plaintiffs have done is identify the independent actions of a couple of detention officers on particular days.

To support this accusation of a "hands-off" management style (a term undefined by Plaintiffs), Plaintiffs cite to *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008). *Tafoya* is inapplicable here. *Tafoya* involved a §1983 claim brought by a female inmate who was sexually assaulted by a detention officer. The inmate alleged, *inter alia*, the sheriff was deliberately indifferent to known inadequacies at the jail violating her Eighth Amendment rights.

Many facts distinguish *Tafoya* from this case: First, in *Tafoya*, plaintiff presented a detailed history of sexual assaults on inmates by detention officers at the jail. Second, those sexual assaults led to a series of criminal convictions and civil suits against the same defendant-sheriff. Third, on appeal from an earlier lawsuit involving the sheriff, the Tenth Circuit described egregious behavior, extensively laying out the deficiencies for the sheriff. Thus, "by the time of the alleged constitutional violation at issue in *Tafoya*, the defendant-sheriff had already 'faced three civil suits' arising from sexual assaults on female inmates by male detention officers." *Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018).

Contrary to *Tafoya*, Plaintiffs have failed to identify other previous, relevant instances that would have suggested the subject incidents would occur. Plaintiffs' municipal liability allegations are merely conclusory in nature, and do not actually say anything about how the Sheriff's Office's alleged failures caused the Plaintiffs' injuries. For that reason, the Court should dismiss the failure to train and supervise claims.

## III.   THE COURT SHOULD REJECT RELIANCE ON THE 2008 DEPARTMENT OF JUSTICE REPORT.

Lastly, lacking any explanation, Plaintiffs throw in references to the 2008 Department of Justice Report, presumably in an attempt to establish municipal liability. However, the Complaint is devoid of any allegations establishing a causal, affirmative connection with Plaintiffs' claims of mistreatment in 2019 and the 2008 report. Rather, the DOJ report is tacked on, akin to a conclusory buzzword. The Court should disregard this attempt to escape Plaintiffs' burden of identifying a policy or custom responsible for the alleged constitutional deprivation.

Courts have repeatedly held the 2008 DOJ report is too old to accurately describe the state of affairs at the Oklahoma County jail many years later, especially when the DOJ report does not address anything similar to the Plaintiffs' present accusations. Here, Plaintiffs' allegations arose more than a decade after the DOJ Report came out. Plaintiffs offer nothing to tie conditions or conduct at the jail in 2019 to jail conditions existing prior to 2008. Plaintiffs would have this Court believe the report is somehow related to this lawsuit, without more. This is not the first time a plaintiff has attempted to use the DOJ Report to shift liability to the Sheriff's Office for events occurring years later.

14

As early as 2012, a court in this district stated that the DOJ report could not be relied upon to establish liability, at least without explaining *how* the 2008 findings contributed to alleged misconduct occurring years later. *Metz v. Bd. of Cty. Comm'rs of Oklahoma Cty., Okla.*, No. CIV-10-1240-D, \*4 (W.D. Okla. Feb. 16, 2012) ("Plaintiff has failed to articulate, however, how any deficiency identified in the 2008 DOJ report may have contributed to Mr. Sloan's attack of him in 2010."). More to the point, Judge Heaton's Order in *Meadows v. Whetsel*, No. CIV-14-1030-HE, 2015 WL 7016496 (W.D. Okla. Nov. 10, 2015), describes the precise problem with using this outdated report to establish liability:

> Plaintiff also relies on a Department of Justice report which was based on tours of the Oklahoma County jail that were conducted in 2003 and 2007. Neither the 2004 incidents nor the report are recent enough to be relevant to a determination of whether plaintiff has demonstrated a widespread practice of the use of excessive force that is so common as to constitute a continuing, persistent practice of unconstitutional conduct by the County's employees. Two isolated, unrelated incidents, even if relatively recent, without more, are not enough to allege an unconstitutional custom or County policy.

*Meadows*, at \*6. That case concerned incidents that occurred in 2012 and 2013. *Id*. If the DOJ Report was considered outdated for those incidents, it is even more so for the 2019 incidents at issue here. In fact, in 2019, Judge DeGiusti also considered whether the report could serve as a *Monell* anchor for a use of force claim that occurred in August 2017. *Willis v. Okla. Cty. Det. Ctr.*, No. 18-CV-323-D, 2019 WL 4409219, at \*5 (W.D. Okla. Sept. 13, 2019). Because plaintiff failed to allege that the incidents discussed in the DOJ Report mirrored, or even bore similarities to, the incident in the *Willis* case, Judge DeGiusti dismissed the plaintiff's claim. *Id.* at \*5-6.

Here, Plaintiffs fail to identify how any conduct, incidents, or conditions identified in the DOJ Report are connected to the complained-of conduct, as alleged by Plaintiffs. For these reasons, the Court should reject any reliance on the DOJ Report.

## CONCLUSION

For the reasons discussed herein, Defendants Board and Sheriff's Office request that the Court enter an Order dismissing the claims against them.

Respectfully submitted,

s/ Randall J. Wood
Randall J. Wood, OBA #10531
Robert S. Lafferrandre, OBA #11897
Jeffrey C. Hendrickson, OBA #32798
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 N. Francis Avenue
Oklahoma City, OK 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rwood@piercecouch.com
rlafferrandre@piercecouch.com
jhendrickson@piercecouch.com
***Attorneys for Defendants Oklahoma
County Sheriff, Board of County
Commissioners for Oklahoma County***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of March, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file; the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen          danielsmolen@ssrok.com
Robert M. Blakemore       bobblakemore@ssrok.com
Cameron Spradling         Cameron@CameronSpradling.com
Lance Phillips            lancebp2000@yahoo.com


                s/ Randall J. Wood
                 Randall J. Wood