IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JA'LEE FOREMAN, JR., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No.: 21-CV-1062-F |
| ) | |
| OKLAHOMA COUNTY SHERIFF, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**COME NOW**, Plaintiffs, Ja'Lee Foreman, Jr., Daniel Hedrick, Joseph "Joey" Mitchell and John Basco (hereinafter, collectively referred to as "Plaintiffs"), and respectfully submit their Response in Opposition to Defendants Oklahoma County Sheriff Tommy Johnson, III, in his official capacity (hereinafter, "Sheriff"), and Oklahoma County Board of County Commissioners' ("BOCC") Motion to Dismiss (Dkt. #23), as follows:

**Introductory Statement**

On November 2, 2021, Plaintiffs filed their Complaint (Dkt. #1), setting forth specific, highly detailed and thorough allegations in support of the constitutional claims brought against Defendants. The Complaint is eighteen (18) pages in length and contains ninety-six (96) paragraphs of substantive content. As detailed in the Complaint, Plaintiffs were subjected cruel and inhumane mistreatment, tantamount to torture, at the Oklahoma County Jail ("Jail"). As Plaintiffs allege, this mistreatment violated their Fourteenth Amendment rights, as pretrial detainees, to be free from excessive use of force and unconstitutional inhumane conditions of confinement.

More specifically, as alleged, Defendants Christian Miles ("Officer Miles") and Gregory Butler, Jr. ("Officer Butler"), both detention officers at the Jail, "systematically worked together

1

and used the benches, bars and attorney booth as a means to discipline inmates and teach them a lesson…." Dkt. #1 at ¶ 69. For instance, as alleged, without justification, Officers Miles and Butler placed Mr. Foreman on a bench, handcuffed him to a bar behind his back and left him restrained in that position for over an hour and a half. *Id.* at ¶¶ 22-23. Later, Officer Butler drove his knee into Mr. Foreman's back and slammed him into the wall of his cell and Officer Miles then spit into Mr. Foreman's face. *Id.* at ¶ 24. On separate occasions, Officers Miles and Butler restrained Plaintiffs Hedrick, Mitchell and Basco to a wall in a "standing stress position," a well-known "enhanced interrogation" tactic. *See id.* at ¶¶ 27-55. After restraining Hedrick, Mitchell and Basco to the wall in a "standing stress position", Officers Miles and Butler played the well-known children's song, "Baby Shark," at high volume on a nearby computer. *Id.* "Baby Shark" was played on a continuous loop. *Id.* Hedrick, Mitchell and Basco were forced to listen to the song over and over, for hours, while shackled to a wall in a standing position. *Id.*

As alleged, "[t]his prolonged restraint of [Hedrick, Mitchell and Basco]… is tantamount to torture, was excessive and not rationally related to any legitimate governmental or penological purpose." Dkt. #1 at ¶¶ 34, 44 and 53. Plaintiffs further allege that "Miles, Butler and [Lieutenant Christopher] Hendershott were subsequently charged criminally, in connection with their treatment of [Hedrick, Mitchell and Basco] with counts of 'Cruelty to Prisoners,' 'Corporal Punishment to an Inmate' and 'Conspiracy.'" Dkt. #1 at ¶¶ 35, 45 and 54 (citing *State of Oklahoma vs. Hendershott, Miles and Butler,* CM-2020-3083 (Oklahoma County Dist. Court)).

Plaintiffs' claims against the Sheriff and BOCC are brought pursuant to a "municipal liability" theory. In this regard, Plaintiffs assert that there is "affirmative link between the … unconstitutional acts of Officers Miles and Butler and Lieutenant Hendershott and policies, practices and/or customs which" the Sheriff and BOCC "promulgated, created, implemented and/or possessed responsibility for." *See, e.g.,* Dkt. #1 at ¶¶ 56-74, 81-86, 91-96. As part of their

Motion to Dismiss, the Sheriff and BOCC aver that "Plaintiffs' Complaint falls far short of meeting the standard for stating a claim for municipal liability." Dkt. #23 at 3. This argument lacks merit. The Motion to Dismiss should be denied.

## **Standard of Review**

When deciding a Rule 12(b)(6) motion to dismiss, courts are "'limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint ....'" *Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir. 2008) (quoting *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995)). In conducting this assessment, courts must "'accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party.'" *Archuleta,* 523 F.3d at 1283 (quoting *Moya v. Schollenbarger,* 465 F.3d 444 at 455 (10th Cir. 2006)).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), the United States Supreme Court held that the complaint must contain "enough facts to state a claim to relief that is *plausible* on its face" (emphasis added). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). "The plausibility requirement 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the conduct necessary to make out the claim." *Burke v. Regalado,* No. 18-CV-231-GKF-FHM, 2019 WL 1371144, at *2 (N.D. Okla. Mar. 26, 2019) (*quoting, Twombly,* 550 U.S. at 556 (2007). The Tenth Circuit has observed that the *Twombly* "opinion seeks to find a middle ground between 'heightened fact pleading,' . . . and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 547 and 555). As the *Robbins* Court reasoned:

> "[P]lausible" cannot mean 'likely to be true.' Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007)]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins,* 519 F.3d at 1247.

As noted above, Plaintiffs' Fourteenth Amendment claims against the Sheriff and BOCC are brought pursuant to a municipal liability theory. This is significant. Even after *Twombly* and *Iqbal*, courts have applied a laxed standard when reviewing municipal liability claims at the motion to dismiss stage. In *Thomas v. City of Galveston,* 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011), the court articulated a method to reconcile the *Iqbal-Twombly* standard with the Supreme Court's prior rejection of a heightened pleading standard for § 1983 claims against municipalities set out in *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993).

Accepting that *Iqbal* instructs courts to utilize judicial experience and common sense when determining whether a complaint states a plausible claim for relief and further recognizing that in the municipal liability context, the *Thomas* Court observed that "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery," and concluded that ***"only minimal factual allegations should be required at the motion to dismiss stage."*** *Thomas,* 800 F. Supp. 2d at 842-43 (emphasis added). The *Thomas* decision struck the appropriate balance of "requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id.* at 844.

Other courts, including the United States District Courts for the Northern and Eastern Districts of Oklahoma, have followed this commonsense approach to the factual specificity

4

required for municipal liability claims. *See, e.g., Gooding v. Ketcher,* 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012); *D.G. by & Through Bradley v. Westville Pub. Sch. Dist. No. I-11 of Adair Cty.,* No. CV-18-045-RAW, 2018 WL 4323917, at *2 (E.D. Okla. Sept. 10, 2018); *Reitz v. City of Abilene,* No. 1:16-CV-0181-BL, 2017 WL 3046881, at *24 (N.D. Tex. May 25, 2017), report and recommendation adopted, No. 1:16-CV-181-C, 2017 WL 3034317 (N.D. Tex. July 17, 2017); *Schaefer v. Whitted,* 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015); *Taylor v. RED Dev., LLC,* No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011); *E.G. by Gonzalez v. Bond,* No. 1:16-CV-0068-BL, 2016 WL 8672774, at *5–6 (N.D. Tex. Sept. 9, 2016), *report and recommendation adopted as modified sub nom. E.G. v. Bond,* No. 1:16-CV-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017). In *Gooding,* the Northern District "agree[d] with the approach … taken in *Taylor v. RED Development, LLC,* No. 11–2178–JWL, 2011 WL 3880881 (D.Kan. Aug. 31, 2011), wherein the court required more than 'boilerplate allegations' of a municipal policy, but ***did not 'deman[d] specific facts that prove the existence of a policy' when a plaintiff would not have access to such information before discovery.***" *Gooding,* 838 F. Supp. 2d at 1241 (also citing *Thomas,* 800 F.Supp.2d at 842–43) (emphasis added).

Applying this standard of review, Plaintiffs' allegations against the Sheriff and BOCC easily survive the Motion to Dismiss.

## Discussion

### I. The BOCC Should *Not* be Dismissed -- as a Matter of Law -- at This Early Stage in the Proceedings

Plaintiffs sued both the Sheriff, in his official capacity, and BOCC out of an abundance of caution. As recently observed by the Northern District of Oklahoma, "there is disagreement among federal district courts in Oklahoma as to whether a board of county commissioners is subject to liability for the operation of a county jail." *Banks v. Moore,* No. 20-CV-0311-CVE-JFJ, 2020 WL

6219791, at *3 (N.D. Okla. Oct. 22, 2020) (citing *Flowers v. Garvin Cty. Bd. of Cty. Commr's*, 2016 WL 3079286 (W.D. Okla. May 3, 2016); *DuBois v. Bd. of Cty. Commr's of Mayes Cty.*, 2014 WL 4810332 (N.D. Okla. Sep. 29, 2014); *Arnold v. Smallwood*, 2012 WL 1657045 (N.D. Okla. May 10, 2012)). Additionally, there is "disagreement in the decisions of Oklahoma's appellate courts concerning a board of county commissioners' liability for the operation of the county jail." *Banks*, 2020 WL 6219791, at *3 (citing *Estate of Crowell ex rel. Boen v. Bd. of Cty. Commr's of Cty. of Cleveland*, 237 P.3d 134, 142-43 (Okla. 2010) (board of county commissioners not proper defendant for claim arising out medical care at county jail); *Edelen v. Bd. of Commr's of Bryan Cty.*, 266 P.3d 660, 667 (Okla. Civ. App. 2011) (distinguishing Crowell and finding that board of county commissioners can be liable for poor medical care at county jail)).

While Defendants appear to concede that the Sheriff, in his official capacity, is the appropriate governmental defendant in this action, other authorities suggest that BOCC may also be a proper defendant in such cases. At this early stage in the proceedings, BOCC should not be dismissed as a matter of law. In the alternative, if the Court decides to dismiss BOCC as a matter of law, BOCC should be dismissed without prejudice to refiling.

## II.     The Sheriff, in His Official Capacity, Should *Not* be Dismissed

As noted above, Plaintiffs' claims are brought against the Oklahoma County Sheriff in his official capacity. A claim against a state actor in his official capacity, such as the Oklahoma County Sheriff, "is essentially another way of pleading an action against the county or municipality" he represents and is considered under the standard applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). *See also see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1977) and subsequent cases, the

6

Supreme Court has consistently "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 403 (1997).

As the Tenth Circuit has succinctly stated, in order to establish *Monell* liability, the plaintiff "must prove (1) official policy or custom[,] (2) causation, and (3) state of mind." *Hinkle v. Beckham Cty. Bd. of Cty. Commissioners,* 962 F.3d 1204, 1239 (10th Cir. 2020).

Policies or customs meeting this standard may arise from "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Hinkle,* 962 F.3d at 1239–40 (10th Cir. 2020) (quoting *Pyle v. Woods,* 874 F.3d 1257, 1266 (10th Cir. 2017)).  A failure to train or supervise are specific grounds for *Monell* liability. *See, e.g., Lance v. Morris,* 985 F.3d 787, 800-02 (10th Cir. 2021).

With respect to causation, the Circuit has explained that "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle,* 962 F.3d at 1241.

The "state of mind" requirement in the municipal liability context is one of "deliberate indifference." However, "[t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998) (emphasis added). As the *Barney* Court explained:

> Deliberate indifference … is defined differently for Eighth Amendment and municipal liability purposes. In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the

7

official. ***In the municipal liability context, deliberate indifference is an <u>objective</u> <u>standard</u> which is satisfied if the risk is so obvious that the official <u>should</u> have known of it.***

*Barney,* 143 F.3d at 1308, n. 5 (citations omitted) (emphasis added).

Here, Plaintiffs allege that there is "affirmative link between the … unconstitutional acts of Officers Miles and Butler and Lieutenant Hendershott and policies, practices and/or customs which" the Sheriff "promulgated, created, implemented and/or possessed responsibility for." *See, e.g.,* Dkt. #1 at ¶ 66. Plaintiffs more specifically allege:

- "Oklahoma County/OCSO[1]/OCCJA failed to adequately train and supervise its officers, including Officers Miles and Butler and Lieutenant Hendershott, with respect to, *inter alia*: use of force, de-escalation, the use of force continuum, appropriate use of force in a correctional setting, use of force on a detainee in handcuffs, cruel or inhumane corrections practices and constitutional requirements for the conditions of confinement."

- "In finding Constitutional liability at the county level, the Tenth Circuit, in *Tafoya v. Salazar*, 516 F.3d 912, 919 (10th Cir. 2008), pointed to evidence of an "undisciplined culture of 'anything-goes' among the detention officers [that] remained unaddressed and unmitigated by Sheriff Salazar, who continued to employ a hands-off approach to jail management." Here, the Sheriff's "management style" was "hands-off" at best, and describing the culture at the Jail as "undisciplined" and "anything goes" would be charitable.  There was an utter absence of supervision and accountability at the Jail, and an acquiescence and acceptance of lawless behavior, amounting to reckless indifference to the safety and well-being of the inmates like these Plaintiffs."

- "As summarized in the Probable Cause Affidavits [at] issue[], the blatantly unconstitutional conduct of Miles, Butler and Hendershott was open, obvious and repeated. Yet, no one from Oklahoma County/OCSO/OCCJA stepped in to take remedial action.  This exemplifies a systemic and deep-seated failure to train and supervise, with respect to the most basic aspects of correctional operations and constitutional conditions of confinement. As stated in the Probable Cause Affidavits:

    Upon interviewing DO Miles, he confirmed that he and Butler systematically worked together and used the benches, bars and attorney booth as a means to discipline inmates and teach them a lesson because they felt that disciplinary action within the Detention Center was not working in correcting the behavior of the inmates. Butler also confirmed that he used the booth as a means of punishment. Miles further stated that the inmates often "pissed off" Butler which

---

[1] "OCSO" is an acronym for the Oklahoma County Sheriff's Office.

8

evidence suggests led to those inmates being taken out of their cells/pods and mistreated. The secure point on the wall was measured as being 3ft from the floor up the wall. At this height and with no chair to sit on, it would have been nearly impossible for most inmates to sit or kneel thus forcing them to stand.

Statements made by inmates and staff also indicated that in addition to the corporal punishment given by Miles and Butler, they additionally worked together and played children's music on a loop to play repetitively aloud while the inmates were housed in the attorney visitation booth thus putting undue emotional stress on the inmates who were most likely already suffering from physical stressors. The playing of the music was said to be a joke between Miles and Butler as confirmed by Miles.

Additional evidence showed that Detention Officers Miles and Butler worked under their direct supervisor, Lt. Hendershott, who ***failed to properly supervise and discipline*** them. Miles and Butler were the subject of numerous inmate complaints that detailed their ***history of mistreatment of inmates*** ranging from retaliation to mishandling of inmate mail. In addition, nearly ***20 hand written inmate complaints*** were received at one time regarding one or both Officers and directly forwarded to their supervisor, Lt. Hendershott. Evidence suggests that no investigation was conducted and subsequently no corrective action was taken by their direct supervisor, Lt. Hendershott. Evidence also showed that when Hendershott first learned of inmate mistreatment by Miles and Butler on 11-23-19, he took no immediate action to either aid the inmate victim or discipline the Officers. ***This appeared to have led to the Officers continuing to mistreat inmates where at least an <u>additional</u> <u>six</u> (6) <u>inmates</u> were <u>physically</u> <u>victimized</u>.***"

- "Oklahoma County/OCSO/OCCJA knew, must have known or should have known that, due to the obviously inadequate training and supervision, violations of detainees' constitutional rights was probable, but failed to take reasonable measure to alleviate the risk of harm."

- "Indeed, unabated unconstitutional conditions at the Jail long pre-date the misconduct of Miles, Butler and Hendershott."

- "For instance, in 2008, the U.S. Department of Justice issued a report on unconstitutional conditions at the Jail. Federal inspectors found inadequate supervision and staffing, a lack of basic medical and mental health care, overcrowding and a high rate of assaults and deaths."[2]

---

[2]      Defendants argue that the DOJ investigation and report are "too old" to form any basis of *Monell* liability. However, plainly, Plaintiffs do not rely on the DOJ investigation and report as a

- ■ "Oklahoma County entered into a memorandum of understanding with the Department of Justice in 2009 that required the county to adequately fund and staff the jail by 2014, or face enforcement action from the federal government."

- ■ "The continually high rate of assaults, uses of violent force and deaths evince an utter failure to abate the known unconstitutional conditions at the Jail."

*Id.* at ¶¶ 66-74 (emphasis in Complaint).

These allegations meet all of the requirements of a plausible municipal liability theory, particularly under the relaxed pleading standard for such claims. The allegations are sufficiently specific to put the Sheriff on notice of particular deficiencies in OCSO's training and supervision at the root of Plaintiffs' claims. The allegations adequately address (1) the existence of official policies or customs, (2) causation, and (3) state of mind. *See, e.g., Hinkle,* 962 F.3d at 1239. As such, dismissal of Plaintiffs' claims against the Sheriff, in his official capacity, is not warranted.

For his part, the Sheriff argues that Plaintiffs' allegations lack sufficient specificity. Defendants assert that Plaintiffs' municipal liability theory is "fact-free", lacks "supporting facts" and is purely "conclusory". Dkt. #23 at 6-13. They attempt to compare Plaintiffs' Complaint in this case to "municipal liability" pleadings that were dismissed in other matters. *See, e.g., id.* at 7-8 (citing *Griego v. City of Albuquerque,* 100 F.Supp. 3d 1192, 1214-15 (D.N.M. 2015); *Keating v. Pittston City,* 446 Fed. Appx. 492, 495 (3d Cir. 2011); *Pyle v. Woods,* 874 F.3d 1257, 1266 (10th Cir. 2017); *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985); *Ristow v. Hansen,* 719 Fed. Appx. 359, 366-67 (5th Cir. 2018)). However, these authorities are inapposite or otherwise distinguishable.

For instance, in *Griego*, the court found that the plaintiff's allegations were "supported by neither a pattern of similar instances nor other evidence, such as statements from police officers or

---

primary basis of municipal liability. Instead, Plaintiffs cite the DOJ investigation and report as pertinent history to show that the *current* deficiencies with respect to supervision and violence at the Jail are long-standing.

10

other APD insiders, or written training materials or oral commands." 100 F.Supp. 3d at 1228. In *Pyle v. Woods*, the Tenth Circuit found the "complaint contains insufficient factual allegations to support an inference that [the defendant detective] was following a policy or custom when he accessed [plaintiff's] information in [a prescription drug] Database." 874 F.3d at 1266.

By contrast, here, Plaintiffs specifically allege a pattern of open, obvious and unabated tortious conduct by Officers Miles and Butler and Lt. Hendershott. *See, e.g.,* Dkt. #1 at ¶¶ 66-74. Support for these allegations comes primarily from the State's own probable cause affidavits. To wit, it is alleged that: **(1)** Officers Miles and Butler "***systematically*** worked together and used the benches, bars and attorney booth as a means to discipline inmates and teach them a lesson"; **(2)** "inmates often 'pissed off' Butler which … led to those inmates being taken out of their cells/pods and mistreated"; **(3)** "in addition to the corporal punishment given by Miles and Butler, they … worked together and played [Baby Shark] on a loop to play repetitively aloud while the inmates were housed in the attorney visitation booth thus putting undue emotional stress on the inmates who were most likely already suffering from physical stressors"; **(4)** "Officers Miles and Butler worked under their direct supervisor, Lt. Hendershott, who failed to properly supervise and discipline them"; **(5)** Officers Miles and Butler were the subject of "numerous inmate complaints that detailed their ***history of mistreatment of inmates*** ranging from retaliation to mishandling of inmate mail"; **(6)** "nearly ***20 hand written inmate complaints*** were received at one time regarding one or both Officers and directly forwarded to their supervisor"; **(7)** "no investigation was conducted and subsequently no corrective action was taken"; and **(8)** "***[t]his appeared to have led to the Officers continuing to mistreat inmates where at least an additional six (6) inmates were physically victimized.***" *Id.* at ¶ 69 (emphasis added).

These allegations are not "conclusory". These allegations are not "threadbare". Rather, these are detailed and specific allegations that Officers Miles and Butler were permitted to

11

"systematically" violate the constitutional rights of multiple inmates, resulting in numerous complaints and the physical victimization of at least seven (7) detainees. This was not an "isolated" incident involving a single officer or prisoner, as Defendants repeatedly suggest. *See, e.g.,* Dkt. #23 at 10-15. Read in the light most favorable to Plaintiffs, they have alleged repeated similar instances of inmate mistreatment. This pattern of misconduct was known, by way of written complaints, and obvious, due to the loud an open nature of the Officers' acts of cruelty.

Furthermore, Plaintiff alleges that this pattern of unconstitutional mistreatment evinces the Sheriff's failure to alleviate constitutional deficiencies identified, long ago, by the U.S. Department of Justice as part of its inspection of the Jail, including inadequate supervision and staffing and a high rate of assaults and deaths. *See* Dkt. #1 at ¶¶ 72-74.

Therefore, contrary to Defendants' position, Plaintiffs *have* plausibly alleged a "custom or usage with the force of law…." *Prince v. Sheriff of Carter Cty.,* 28 F.4th 1033 (10th Cir. 2022). And Plaintiffs *have* plausibly alleged a fundamental, and system-wide, failure to supervise and train. *See, e.g., Lance,* 985 F.3d at 800-02. In particular, as alleged, and as manifested by the established pattern of tortious conduct, OCSO has failed to supervise and train with respect to use of force, de-escalation, the use of force continuum, appropriate use of force in a correctional setting, use of force on a detainee in handcuffs, cruel or inhumane corrections practices and constitutional requirements for the conditions of confinement. *See* Dkt. #1 at ¶¶ 65-74.

As for causation, "the challenged policy or practice [is] closely related to the violation of the plaintiff's federally protected right." *Hinkle,* 962 F.3d at 1241. That is, as plausibly alleged, if Officers Miles and Butler and Lieutenant Hendershott had been properly supervised and trained, concerning use of force, humane detention practices and the constitutional requirements for conditions of confinement, it likely that Plaintiffs would not have suffered injuries of a constitutional dimension.

Lastly, the alleged pattern of unconstitutional mistreatment, resulting in injury to multiple inmates, is more than enough to adequately assert "deliberate indifference" at the County level. Again, deliberate indifference, for the purposes of municipal liability is an "objective" standard. *Barney,* 143 F.3d at 1308, n. 5. Plaintiffs have clearly alleged a series of similar abuse of inmates "systematically" involving "benches, bars and attorney booth as a means to discipline inmates". *See* Dkt. #1 at ¶¶ 55-74. These unconstitutional practices were open and conspicuous, posing risks to inmate safety so obvious that the Sheriff "should have" known it. *Id.* Yet, as alleged, OCSO disregarded those obvious risks. *Id.* This is deliberate indifference on the part of the County.

Defendants' averments -- that Plaintiffs have failed to adequately allege the Sheriff's municipal liability -- are baseless. Such arguments simply ignore the substance of the Complaint. Overall, Plaintiffs *do* plausibly allege the Sheriff's "management style" was "hands-off" and that the culture at the Jail was "undisciplined". Dkt. #1 at ¶ 68 (quoting *Tafoya,* 516 F.3d at 919. As alleged, there was an utter absence of supervision and accountability at the Jail, and an acquiescence and acceptance of lawless behavior, amounting to reckless indifference to the safety and well-being of the inmates like these Plaintiffs. *Id.*

Plaintiffs have alleged plausible claims against the Sheriff under a municipal liability theory.

WHEREFORE, premises considered, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss (Dkt. #23).

    Respectfully submitted,

    /s/ Robert M. Blakemore
    Daniel E. Smolen, OBA #19943
    Robert M. Blakemore, OBA #18656
    Bryon D. Helm, OBA #33003
    **SMOLEN & ROYTMAN**
    701 South Cincinnati Avenue
    Tulsa, OK 74119

>
> (918) 585-2667
> (918) 585-2669 Fax
> danielsmolen@ssrok.com
> bobblakemore@ssrok.com
> bryonhelm@ssrok.com
>
> ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of March 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Robert M. Blakemore

14