## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JA'LEE FOREMAN, JR., DANIEL HEDRICK, JOSEPH MITCHELL, and JOHN BASCO, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. CIV-21-1062-F |
| OKLAHOMA COUNTY SHERIFF, OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY, CHRISTIAN CHARLES MILES, and GREGORY CORNELL BUTLER, JR., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Defendants Board of County Commissioners for Oklahoma County and Oklahoma County Sheriff (currently Tommie Johnson, III), have moved for dismissal of plaintiffs' claims under Rule 12(b)(6), Fed. R. Civ. P. Doc. no. 23. Plaintiffs have responded, opposing dismissal. Doc. no. 31. Defendants have replied. Doc. no. 32. The matter is at issue.

I.

In late 2019, plaintiffs Ja'Lee Foreman, Jr. (Foreman), Daniel Hedrick (Hedrick), Joseph Mitchell (Mitchell) and John Basco (Basco), were pretrial detainees at the Oklahoma County Detention Center (Oklahoma County Jail). While

in custody, they were allegedly subjected to prolonged physical restraint by defendants, Christian Charles Miles (Miles) and Gregory Cornell Butler, Jr. (Butler), Oklahoma County Jail detention officers.  They assert that they were subjected to excessive force and that the use of force served no legitimate governmental or penological purpose.[1]  Three of the plaintiffs, Hedrick, Mitchell, and Basco, while physically restrained, were allegedly forced to listen to a well-known children's song "Baby Shark" that played at a high volume on a continuous loop.  In addition, after Foreman was released from his prolonged physical restraint and returned to his cell, defendant Miles allegedly drove his knee into Foreman's back, slammed him against the wall of the cell, and spit into his face.  According to plaintiffs, non-party Lieutenant Christopher Raymond Hendershott, who was shift commander, took no action to intervene to stop the detention officers' alleged misconduct.  Plaintiffs claim their due process rights under the Fourteenth Amendment were violated by defendants' alleged misconduct.  They seek to recover their alleged damages under 42 U.S.C. § 1983.

In addition to naming Miles and Butler as defendants,[2] plaintiffs also name as defendants Board of County Commissioners for Oklahoma County (Board) and Oklahoma County Sheriff (Sheriff).  Plaintiffs seek to recover damages against these defendants under a municipal liability theory.   Defendants Board and Sheriff move for dismissal under Rule 12(b)(6) of all claims alleged against them.

---

[1] According to the complaint, Foreman, with his hands behind his back, was handcuffed to a bar of a bench outside the jail pod for over one and a half hours.  Hedrick, Mitchell and Basco, with their hands handcuffed behind their back, were secured to a wall in an attorney visitation room and placed in a "standing stress position."  Hedrick was left in the position for one and a half hours; Mitchell was left in the position for three to four hours; and Basco was left in the position for approximately two hours.

[2] The case against defendants Miles and Butler is currently stayed pending state criminal proceedings.

II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual matter, accepted as true, to "'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

III.

Initially, defendant Board seeks dismissal of plaintiffs' claims, arguing that the claims against it are duplicative of the claims against defendant Sheriff. Moreover, it contends it is not a proper party because under Oklahoma law, the county sheriff is responsible for training and supervising jail personnel and has the final policymaking authority over the county jail.

Plaintiffs represent they sued both defendants out of an abundance of caution. They point out that there is a disagreement between the federal district courts in Oklahoma, and between Oklahoma's appellate courts, with respect to the Board's liability for operation of the county jail.  At this early stage, plaintiffs request the court not to dismiss defendant Board.  Alternatively, plaintiffs request the court to dismiss defendant Board without prejudice.

Upon review, the court concludes defendant Board should be dismissed without prejudice.  The §1983 claims against defendants Board and Sheriff are duplicative.  *See*, Sawyers v. Norton, 962 F.3d 1270, 1278 n. 4 (10th Cir. 2020). Moreover, 19 O.S. § 4, as amended, makes "clear that the correct means by which to name a county as a defendant in an action involving § 1983 claims (claims not arising out of contract) is to name the appropriate county officer in his or her official capacity, not the Board."  Kirkendall-Heller v. Board of Commissioners of Oklahoma County, Case No. CIV-21-0011-F, 2021 WL 2371348, at *1 (W.D. Okla.

June 9, 2021).  In the case at bar, the Oklahoma County Sheriff is the appropriate county official to name as defendant because the county sheriff is responsible for training and supervision of jail personnel and has the final policymaking authority for the jail.  *See*, 19 O.S. § 513, § 513.1; 57 O.S. § 47.[3]  And the Oklahoma County Sheriff is sued in an official capacity.  Consequently, plaintiffs' complaint against defendant Board will be dismissed without prejudice.

IV.

Defendant Sheriff also seeks dismissal of plaintiffs' complaint, contending the factual allegations are not sufficient to state a claim of municipal liability.

The Tenth Circuit recently addressed municipal liability under § 1983 in Waller v. City and County of Denver, 932 F.3d 1277, 1283 (10th Cir. 2019).  In so doing, the appellate court stated:

> The Supreme Court has made clear that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  In other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.  Instead, the government as an entity may only be held liable when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.
>
> Thus, to establish municipal liability, a plaintiff must first demonstrate a municipal policy or custom, which may take one of the following forms:
>
> > (1) a formal regulation or policy statement;
> > (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well

---

[3] State law determines whether an official has final policymaking authority for purposes of § 1983. *See*, McMillian v. Monroe County, Ala., 520 U.S. 781, 786 (1997).

settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

\* \* \* \*

After establishing a municipal policy or custom, a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged. Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring.

Finally, at least for claims of inadequate hiring, training, or other supervisory practices, a plaintiff must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action, as a less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities. The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation,

> and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. Deliberate indifference may be found absent a pattern of unconstitutional behavior only in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

Waller, 932 F.3d 1283-1285 (alterations, citations and quotation marks omitted).

With this legal background in mind, the court initially considers whether plaintiffs have sufficiently alleged a municipal policy or custom.  Plaintiffs appear to rely upon two forms of municipal policy or custom: (1) an informal custom; and (2) failure to adequately train and supervise.[4]

*a. Failure to Adequately Train and Supervise*

The Tenth Circuit treats allegations of failure to train and failure to supervise the "same way." Whitewater v. Goss, 192 Fed. Appx. 794, 797 (10th Cir. 2006) (unpublished decision cited as persuasive pursuant to 10th Cir. R. 32.1(A)).  Only where a municipality's failure to train or supervise employees evidences a "deliberate indifference to the rights of its inhabitants" can the failure to train or supervise be considered a "policy or custom that is actionable under § 1983." *See*, City of Canton v. Harris, 489 U.S. 378, 389 (1989) (internal quotations marks omitted).

"Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action." George, on behalf of Bradshaw v. Beaver County, by and through Beaver County Board of Commissioners, 32 F.4th

---

[4] Plaintiffs allege that the Sheriff failed to train and supervise his officers with respect to, *inter alia*, use of force, de-escalation, use of force continuum, appropriate use of force in a correctional setting, use of force on a detainee in handcuffs, cruel or inhumane corrections practices and constitutional requirements for conditions of confinement.

1246, 1253 (10th Cir. 2022) (citation omitted).  As stated, deliberate indifference may be established by showing that the municipality had "'actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'"  Waller, 932 F.3d at 1284 (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998)).  Notice can be established by "proving the existence of a pattern of tortious conduct."  Id.  Absent a pattern of unconstitutional behavior, deliberate indifference may be found only in a "'narrow range of circumstances' where 'a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'"  Id. (quoting Barney, 143 F.3d at 1307-08) (other citation and quotation marks omitted).

Plaintiffs have not alleged sufficient facts to plausibly support an inference that defendant Sheriff acted with deliberate indifference.  Initially, the complaint does not set forth factual allegations establishing a pattern of similar constitutional violations that occurred prior to plaintiffs' alleged incidents.  See, Connick v. Thompson, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").  Plaintiffs have alleged, based upon the state's probable cause affidavits, that at least six additional detainees were physically victimized.  However, the affidavits do not specifically indicate when the six additional incidents occurred.  From the affidavits, these incidents appear to have occurred after plaintiff Hedrick was injured on November 23, 2019.  Incidents that occur after the incidents at issue cannot provide notice to a municipality of a deficiency in its training or supervision.  Waller, 932 F.3d at 1286.  As to plaintiffs Mitchell and Basco, who were injured in late November and early December of 2019, the prior incidents involving plaintiffs Foreman and Hedrick would not, in the court's view, constitute a pattern of tortious conduct.  In addition, although the

affidavits state that the additional inmates were "physically victimized," there is no indication in the probable cause affidavits of how these inmates were physically victimized.  There is no indication that the inmates were physically victimized in the same alleged manner, or to the same degree, as plaintiffs.  The affidavits also state that defendants Miles and Butler were the subject of numerous inmate complaints that detailed their history of mistreatment of inmates.  They also state 20 hand-written complaints from inmates were received "at one time" and forwarded to Lieutenant Hendershott.  The affidavits, however, do not state when the inmate complaints were received, and according to the affidavits, the history of mistreatment ranged "from retaliation to mishandling of inmate mail."  There is no indication that the alleged history of mistreatment of inmates involved misconduct similar to that at issue in plaintiffs' complaint.[5]  Lastly, plaintiffs cite a 2008 report by the United States Department of Justice regarding unconstitutional conditions found at the Oklahoma County Jail.  According to plaintiffs, federal inspectors found inadequate supervision and staffing, a lack of basic medical and mental health care, overcrowding and a high rate of assaults and deaths.  Plaintiffs, however, fail to allege any facts to connect any of the incidents in the report to the incidents alleged in the complaint.  Consequently, the court cannot plausibly infer that the report could have put defendant Sheriff on notice that training or supervision was necessary to avoid the constitutional violations asserted in this case.

Further, plaintiffs have not alleged sufficient facts for this case to fall within the "narrow range of circumstances," justifying a finding of deliberate indifference absent a pattern of similar constitutional violations.  *See*, <u>Barney</u>, 143 F.3d at 1307-08.  The facts alleged are insufficient to plausibly support an inference that the

---

[5] Plaintiffs allege that Oklahoma County District Attorney David Prater publicly commented that defendants Miles and Butler possessed a long history of mistreatment.  But plaintiffs do not allege any facts to indicate what this history included.

alleged conduct by defendants Miles and Butler was a "highly predictable" or "plainly obvious" consequence of the alleged failure to train or supervise. Waller, 932 F.3d at 1284. In the court's view, the conduct alleged does not fall within the "ambiguous 'gray area[]'" about which detention officers would obviously need training to differentiate lawful from unlawful conduct. *Id*. at 1288. The court therefore concludes that plaintiffs have failed to allege a municipal policy or custom based on a failure to train or supervise.

 *b. Informal Custom*

  "An unofficial policy or custom can trigger municipal liability if the practice is so permanent and well settled as to constitute a custom or usage with the force of law . . . . [T]he actions must be persistent and widespread practices of city officials." Prince v. Sheriff of Carter County, 28 F.4th 1033, 1049 (10th Cir. 2022) (citation and internal quotation marks omitted). As to informal customs, a plaintiff may plead either a pattern of multiple similar instances of misconduct or use other facts, such as a jail official's statements attesting to the policy's existence. *See*, Griego v. City of Albuquerque, 100 F.Supp.3d 1192, 1213 (D.N.M. 2015). Plaintiffs have not alleged any similar instances of misconduct which occurred prior to the instances of misconduct alleged in this case. Although post-incident conduct may be relevant to show the existence of an informal policy or custom at the time of the constitutional violations at issue, *see*, Estate of Kowalski v. Shrader, Civil Action No. 21-cv-00827-NYW, 2022 WL 19422, at *20 (D. Colo. Jan. 3, 2022), plaintiffs' allegations fail to indicate that any of the alleged post-incident conduct (six additional inmates physically victimized) is similar to the alleged incidents involving plaintiffs. The alleged history of mistreatment ranging from retaliation to mishandling of inmate mail and the twenty hand-written inmate complaints do not show similar incidents to those involving plaintiffs. Additionally, the court concludes that the 2008 Department of Justice report is not sufficient to demonstrate a widespread practice

of the alleged use of excessive force by detention officers.  Meadows v. Whetsel, Case No. CIV-14-1030-HE, 2015 WL 7016496, at *6 (W.D. Okla. Nov. 10, 2015). Moreover, the factual allegations are insufficient to show statements by one or more jail officials, attesting to the existence of a persistent and widespread practice– amounting to a policy for § 1983 purposes–of use of excessive force on pretrial detainees.  See, Griego, 100 F.Supp.3d at 1213.  Thus, the court finds the factual allegations are insufficient to demonstrate a municipal policy or custom based upon an informal custom.

* * * *

Because plaintiffs have failed to allege sufficient facts to demonstrate a municipal policy or custom, the court finds that plaintiffs have failed to state a plausible claim of municipal liability against defendant Sheriff.  Consequently, plaintiffs' complaint against defendant Sheriff will be dismissed without prejudice.

V.

Accordingly, the "Joint Motion to Dismiss and Brief in Support of Defendants Board of County Commissioners and Oklahoma County Sheriff Tomm[ie] Johnson, III" (doc. no. 23) is **GRANTED**.  Plaintiffs' complaint against defendants Board of County Commissioners for Oklahoma County and Oklahoma County Sheriff is **DISMISSED WITHOUT PREJUDICE**.  Proceedings in this case have been stayed for the time being.  If, at a later stage of this case, plaintiffs perceive that they have in hand facts sufficient to satisfy the applicable standards, as discussed above, they are free to move to amend.

IT IS SO ORDERED this 6th day of July, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-1062p010  rev _.docx

10